# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

JANET MARGARET G.,[1]            )   NO. CV 19-5095-KS
            **Plaintiff,**     )
    **v.**                  )   **MEMORANDUM OPINION AND ORDER**
                    )
ANDREW M. SAUL, Commissioner     )
of Social Security,             )
            **Defendant.**     )
_____  )

## INTRODUCTION

Janet Margaret G. ("Plaintiff") filed a Complaint on June 12, 2019, seeking review of the denial of her application for a period of disability and disability insurance benefits ("DIB").  On July 31, 2019, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge.  (Dkt. Nos. 11, 12, 13.)  On March 9, 2020, the parties filed a Joint Stipulation ("Joint Stip.").  (Dkt. No. 20.)  Plaintiff seeks an order remanding for further proceedings.  (Joint Stip. at 14.)  The Commissioner requests that

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

the ALJ's decision be affirmed or, in the alternative, remanded for further proceedings.  (*See id*.)  The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

In November 2015, Plaintiff, who was born on September 12, 1960, filed an application for a period of disability and DIB.[2]  (*See* Administrative Record ("AR") 15, 170; Joint Stip. at 2.)  Plaintiff alleged disability commencing January 15, 2014 due to:  anxiety/panic disorder; short term memory loss; inability to concentrate; "osteoarthritis neck;" spinal degeneration; chronic pain; chest pain; invasive ductal breast carcinoma/stage 1; insomnia; extremity numbness; and untreated hormonal imbalances.  (AR 184.)  Plaintiff previously worked as a receptionist in a doctor's office (DOT 237.367-038) and as a personnel scheduler (DOT 215.367-014).  (AR 59, 185.)  After the Commissioner denied Plaintiff's applications initially (AR 98) and on reconsideration (AR 105), Plaintiff requested a hearing (AR 110).  Administrative Law Judge Henry Koltys ("ALJ") held a hearing on April 5, 2018.  (AR 33.)  Plaintiff, who was represented by counsel, testified before the ALJ as did vocational expert ("VE") Chris Meyers and witness Jerry Charles Wood.  (AR 34-63.)  On July 20, 2018, the ALJ issued an unfavorable decision, denying Plaintiff's application.  (AR 12-26.)  On April 22, 2019, the Appeals Council denied Plaintiff's request for review.  (AR 1-6.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2016.  (AR 17.)  The ALJ further found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 15, 2014 through her date

---

[2]     Plaintiff was 53 years old on the alleged onset date and thus met the agency's definition of a person closely approaching advanced age.  *See* 20 C.F.R. § 404.1563(d).  Plaintiff has since changed age categories and is now a person of advanced age.  *See id.* § 404.1563(e).

last insured (March 31, 2016).  (AR 17.)  The ALJ determined that Plaintiff had the severe impairment of degenerative disc disease.  (AR 17.)  In reaching this conclusion, the ALJ found that Plaintiff's malignant neoplasm of the breast was a "non-severe impairment that was successfully treated with recovery in significantly less than 12 continuous months[;]" and Plaintiff's "anxiety did not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and is therefore non-severe."  (AR 17.)  The ALJ further concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).  (AR 18.)  The ALJ determined that Plaintiff had the residual functional capacity ("RFC") "to perform light work as defined in 20 C.F.R. § 404.1567(b) except for frequently climbing ramps/stairs, and occasionally climbing ladders/ropes/scaffolds."  (AR 18.)

The ALJ found that Plaintiff was able to perform her past relevant work as a receptionist in a doctor's office (DOT 237.367-038) and as a personnel scheduler (DOT 215.367-014). (AR 25.)  Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged onset date through the date of the ALJ's decision.  (AR 25.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).  "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they

are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

Plaintiff presents the Court with two issues for consideration: (1) whether substantial evidence in the record supports the ALJ's finding that Plaintiff's mental impairment (anxiety) is non-severe (Joint Stip. at 4); and (2) whether the ALJ erred by failing to assess whether Plaintiff's mild limitation in understanding, remembering, or applying information would affect her ability to perform semi-skilled work (Joint Stip. at 6).

4

**I.      The ALJ's Determination That Plaintiff's Mental Impairment Was Non-Severe**

   **A.  Applicable Law**

At step two of the sequential analysis, the ALJ must determine whether the claimant has a medically determinable impairment, or combination of impairments, that is "severe."  The Commissioner defines a severe impairment as "[a]n impairment or combination of impairments . . . [that] significantly limit[s] your physical or mental ability to do basic work activities" and lasted, or is expected to last, for a continuous period of at least 12 months.  20 C.F.R. §§ 404.1522, 404.1520(a)(4)(ii) (you are not disabled if you do not have a severe medically determinable physical or mental impairment, or combination of impairments, that meets the 12 month duration requirement in 20 C.F.R. § 404.1509).  "Basic work activities" means the "abilities and aptitudes necessary to do most jobs, including, *inter alia*: "understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting."  20 C.F.R. § 404.1522.

"An impairment or combination of impairments may be found not severe *only if* the evidence establishes a *slight* abnormality that has no more than a *minimal* effect on an individual's ability to work."  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis added) (citations and internal quotation marks omitted).  If "an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step."  *Id.* at 687 (citation and internal quotation marks omitted).  "Step two, then, is a *de minimis* screening device [used] to dispose of groundless claims, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence."  *Id.* (emphasis added) (citations and internal quotation marks omitted).

5

1

2

**B.  ALJ's Decision**

3

4        The ALJ found that Plaintiff's anxiety, although a medically determinable impairment,

5   was non-severe because it "did not cause more than minimal limitation in [Plaintiff's] ability

6   to perform basic mental work activities."  (AR 17.)  "In making this finding," the ALJ

7   explained, he "considered the four broad areas of mental functioning set out in the disability

8   regulations for evaluating mental disorders and in the Listing of Impairments[,]" *i.e.* the

9   "paragraph B criteria":   (1) understanding, remembering, or applying information; (2)

10   interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or

11   managing oneself.  (AR 18.)

12        The ALJ found that Plaintiff had only a mild limitation in the first area (understanding,

13   remembering, or applying information) and no limitation in the other three areas.  (AR 18.)

14   The ALJ added that his assessment of Plaintiff's RFC "reflects the degree of limitation . . . in

15   the 'paragraph B' mental function analysis."  (AR 18.)  In that assessment, the ALJ found,

16   *inter alia*, that Plaintiff's statements concerning the intensity, persistence, and limiting effects

17   of her symptoms were not entirely consistent with the evidence in the record because:  (1) she

18   was consistently noted by medical sources to be alert and fully oriented with intact judgment

19   and insight; (2) she was assessed with anxiety symptoms only when she ran out of medication

20   but stability was observed when she was compliant; (3) psychological testing did not support

21   significant memory dysfunction precluding work-like tasks; and (4) "treating physician Dr.

22   Bezema noted alleged memory loss was not witnessed."  (AR 24) (citing Ex. 11F).  The ALJ

23   added that Plaintiff's medical visits occurred infrequently relative to the severity of the

24   symptoms alleged.  (AR 24.)

25

26        The ALJ also found that the 2018 opinion of Dr. Megan Mescher-Cox, D.O., an

27   internist, was "a sympathetic recitation of symptoms put forth by [Plaintiff], rather than

28   objective opinion" and assessed marked mental imitations that were outside her area of

6

expertise.  (AR 25) (citing Ex. 35F).  The ALJ also acknowledged that Plaintiff received talk therapy from a licensed marriage and family therapist, Kristen Routh, for three months in 2016 "with 'significant improvement' anticipated and no evidence of further treatment."  (AR 25) (citing Exs. 6F, 10F).  Finally, the ALJ found that the opinions of State agency medical consultants Dr. Aquino-Caro and Dr. Klein, which indicated a non-severe mental impairment, were "fully persuasive based upon supportability with medical documentation, consistency with the record, and areas of specialization."  (AR 25) (citing Exs. 2A, 4A.)  The ALJ added that the report of the consultative examiner, Dr. Venter, was also consistent with these statements.  (AR 25) (citing Ex. 8F).

### C. Discussion

#### 1.   Arguments of the Parties

Plaintiff argues that the ALJ's finding that Plaintiff did not have a severe mental impairment during the relevant period is not supported by substantial evidence in the record. Plaintiff observes that the record "reveals [Plaintiff's] treatment for panic disorder, anxiety, and major depressive disorder" (Joint Stip. at 5) (citing AR 326-28, 504-10, 557-85, 1034-76, 1244-92), and it was "noted" that Plaintiff went on multiple medications with only short-term benefit (Joint Stip. at 5) (citing AR 388).  Plaintiff adds that her therapist identified "multiple objective clinical findings that support a severity finding."  (Joint Stip. at 5) (citing AR 505). Finally, Plaintiff points to the opinion of the consulting psychologist, Dr. Venter, who found that Plaintiff was "moderately impaired in the ability to maintain regular attendance in the workplace and perform work activities on a consistent basis."  (Joint Stip. at 5) (citing AR 545-54).  Plaintiff states that the ALJ appeared to credit this opinion in his decision, or, at least, gave no reason for discounting it, and characterized Dr. Venter's opinion as being consistent with the opinions of the state agency physicians that Plaintiff's mental impairment was non-severe.  (Joint Stip. at 5) (citing AR 25).

Defendant responds that "substantial evidence," in the social security context, is not a high threshold. (Joint Stip. at 7) (citing *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019)). The question is only whether the record contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and, Defendant asserts, the record here meets this standard. (Joint Stip. at 7-8.) According to Defendant, Plaintiff experienced anxiety while undergoing treatment for breast cancer but her mental status examinations revealed either mild or unremarkable findings. (Joint Stip. at 7.) Further, although Plaintiff submitted medical records post-dating her date last insured, the question before the ALJ is whether Plaintiff had a severe mental impairment between the alleged onset date and the date last insured. (Joint Stip. at 8.)

In Reply, Plaintiff asserts that Defendant "fails to recognize the waxing and waning nature" of the symptoms of her mental impairment. (Joint Stip. at 12-13.) Plaintiff also observes that Defendant mischaracterizes the findings of Dr. Venter, who assessed Plaintiff with a GAF score of 55,[3] opined that Plaintiff's prognosis was guarded, and assessed a moderate limitation on Plaintiff's ability to maintain regular attendance in the workplace and perform work activities on a consistent basis. (Joint Stip. at 13.)

## 2. Analysis

In the context of a claim under step two of the sequential analysis, the Court's inquiry focuses on whether the medical evidence clearly establishes that, during the relevant period (January 15, 2014 through March 31, 2016), Plaintiff did not develop mental limitations that had "more than a minimal effect on" her ability to work for at least 12 continuous months.

---

[3]     A GAF score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM-IV") 34 (revised 4th ed. 2000). The Commissioner has stated that the GAF scale "does not have a direct correlation to the severity requirements in [the] mental disorders listings," 65 Fed. Reg. 50764, 50764-65 (Aug. 21, 2000), and the most recent edition of the DSM "dropped" the GAF scale. Diagnostic And Statistical Manual Of Mental Disorders 16 (5th ed. 2012).

*See Webb*, 433 F.3d at 686; 20 C.F.R. § 404.1520(a)(4)(ii) (you are not disabled if you do not have a severe medically determinable physical or mental impairment, or combination of impairments, that meets the 12-month duration requirement in 20 C.F.R. § 404.1509). The Court finds that it does.

The earliest medical records reflecting a mental health impairment are from January 20, 2015, at which time Plaintiff's chief complaint was physical pain, but her medications at the time included an antidepressant (Mirtazapine) and an anti-anxiety medication (Xanax) and her diagnoses included anxiety and major depressive disorder. (AR 327.) Two months later, Plaintiff's chief complaint was severe panic attacks. (AR 330 (March 3, 2015).) On May 1, 2015, she no longer complained of severe panic attacks but informed her doctor that she would like to receive disability benefits because she needs help and was experiencing physical pain all day long. (AR 334.)

In July 2015, Plaintiff went to a new patient consult and reported that, for more than 20 years, a period of time that encompassed her history of full-time work, she had experienced chest pains "associated" with anxiety and episodes of panic. (AR 387.) She was strongly advised to begin long-term counseling. (AR 388.)

In September 2015, Plaintiff was diagnosed with breast cancer. (AR 358.) The clinician wrote that Plaintiff's "general anxiety [was] understandably made worse by her current diagnosis." (AR 358.) However, there were no reports of panic or depression, no insomnia, no social issues, no ruminations, and no memory changes. (AR 358.) The clinician observed that Plaintiff had a normal affect and thought process, good insight, and good judgment. (AR 360.) She was advised to continue taking Xanax for "breakthrough anxiety" and to practice relaxation techniques. (AR 360.)

Despite the obvious stress imposed by her breast cancer diagnosis, the medical evidence indicates that Plaintiff's mental health remained relatively stable over the next several visits. In October 2015, Plaintiff was "still very anxious about [her] health condition," but had no other issues:  no reports of panic; no insomnia; no delusions; no rumination; no social issues; and no memory changes.  (AR 350 (October 5, 2015).)   She also exhibited a normal affect, no pressured speech, no tangential thought processes, good insight, and good judgment.  (AR 352.)

On November 6, 2015, Plaintiff went to the emergency room because she had run out of her Xanax and was having difficulty sleeping.  (AR 655.)  Plaintiff again reported that her anxiety was "chronic."  (AR 655.)  The ER doctor stated that Plaintiff's mental health symptoms were "moderate" with her breast cancer diagnosis acting as an exacerbating factor.  (AR 655.)  The ER doctor also stated that Plaintiff was alert and oriented, with normal speech, and normal "motor," "sensory," and coordination.  (AR 656.)

Three days later on November 9, 2015, Plaintiff had a follow up appointment related to her anxiety.  (AR 346.)  She reported no fatigue, no panic, no insomnia, no personality changes, no delusions, no rumination, no social issues, and no memory changes.  (AR 346.) The clinician observed that Plaintiff was "mildly" anxious but exhibited no pressured speech, no tangential thought processes, good insight, and good judgment.  (AR 348.)  The clinician advised Plaintiff that she will need to taper down her Xanax and recommended practicing relaxation techniques.  (AR 349.)  Two weeks later, Plaintiff went to the emergency room for a second time following a fall and, again, was observed to be alert and oriented with normal speech and an appropriate mood and affect.  (AR 715, 717 (November 23, 2015).)

On December 2, 2015, Plaintiff went to the clinic because she had again run out of Xanax and was having panic attacks.  (AR 342.)  Plaintiff reported no other issues:  no depression; only mild insomnia; no personality changes; no delusions; no rumination; no

social issues; and no memory changes.  (AR 342.)  The clinician observed an anxious affect but no pressured speech, no tangential thought processes, good insight, and good judgment. (AR 342.)

Almost four weeks later, on December 29, 2015, Plaintiff had a follow-up appointment related to her anxiety.  (AR 339.)  Plaintiff she reported no panic, no depression, no insomnia, no personality changes, no delusions, no rumination, no social issues, and no memory changes, and she exhibited a normal affect, no pressured speech, and no tangential thought processes. (AR 339.)  She was advised to start Celexa and use only a low dose of Xanax for breakthrough anxiety in addition to practicing relaxation techniques.  (AR 340.)

In January 2016, Plaintiff started counseling for "chronic depression with generalized anxiety" with a licensed marriage and family therapist ("LMFT"), Kristen Routh.  (AR 581, 504.)  Although she had been advised to obtain "long-term" counseling, the record indicates that Plaintiff only saw Routh for counseling for three months.  (*See* AR 504.)  There are no treatment records from Routh's counseling sessions with Plaintiff, but Routh provided an undated summary of Plaintiff's treatment with her, which states that Plaintiff participated in nine counseling sessions, either in-person or over the phone, between January 2, 2016 and March 3, 2016.  (AR 504.)  On February 11, 2016, after seven sessions with Plaintiff, Routh opined that Plaintiff's depression and anxiety "substantially limit several of her major life activities," including concentrating, remembering, sleeping, eating, and "implementing overall care for self."  (AR 581.)  Eight days later, Plaintiff went to her well woman exam with her general practitioner, where she reported having run out of her anxiety medication but having no other issues, including experiencing no anxiety or panic, no depression, no insomnia, no rumination, no social issues, no memory changes, and no eating concerns.  (AR 593 (February 19, 2016).)

On an unspecified date, presumably after Plaintiff's last appointment with her in March 2016, Routh opined that "significant improvement" in Plaintiff's mental health was possible with three to six months of regular therapy. (AR 507.) Routh opined that Plaintiff exhibited some impairment in her short and long term memory as evidenced by Plaintiff, who was 55 years old, retelling the same stories week to week, forgetting appointment times (although there is no indication that Plaintiff was ever late to, or missed, an appointment—either with Routh or any other care provider), and getting lost when coming to the office (although, again, there is no evidence she ever missed or was late to any medical appointment because she got lost). (AR 507.) Routh did not point to any specific examples of these incidents or cite any dates when these incidents occurred. (*See generally id.*)

Routh opined that Plaintiff gets frustrated during periods of sustained concentration but is not impaired in the area of persistence. (AR 506.) She stated that Plaintiff, who never reported to any other clinician having decreased interest in socializing or any other social issues, "lack[ed] a desire to interact with others." (AR 506.) Notably, Routh did not indicate that Plaintiff was impaired in her ability to interact with others if placed in an environment that required her to do so. (*See generally id.*) Finally, she opined that, in the area of adaptation, Plaintiff could become "very overwhelmed by past experiences, feelings of powerlessness, rejection, and repeated disappointment." (AR 506.) Again, it is unclear to what extent, if any, this potential to get overwhelmed impaired Plaintiff's ability to adapt to changes in routine or new situations. (*See generally id.*) Although Routh's opinion indicates that Plaintiff should have continued with the counseling sessions if she was serious about improving her mental health, the record indicates that Plaintiff never saw Routh for counseling again and did not seek out any other talk therapy.

On March 17, 2016, the same month as Plaintiff's last appointment with Routh, Plaintiff saw her general practitioner for a follow up regarding her anxiety. (AR 601.) In contrast with Routh's statements and opinion, Plaintiff reported to her general practitioner that she was

experiencing no panic, no depression, no insomnia, no personality changes, no rumination, no social issues, no memory changes, and no eating concerns.  (AR 602.)  Plaintiff's doctor observed that Plaintiff exhibited a normal affect, no pressured speech, no tangential thought processes, good insight, and good judgment.  (AR 602.)

The final medical record predating Plaintiff's last date insured reflects Plaintiff's March 22, 2016 consultative psychological evaluation performed by Henry J. Venter, Ph.D., a licensed clinical psychologist.  (*See* AR 545-553.)  Plaintiff reported that she had started suffering short term memory loss and concentration problems "following radiation treatment" earlier in the year.  (AR 546.)  She stated that she cannot think clearly, cannot focus, experiences severe anxiety and depression, and has trouble coping.  (AR 546.)  In describing her work history to Dr. Venter, Plaintiff did not indicate that her alleged mental health conditions, which she had described to other clinicians as "chronic" and more than 20-years old, had, at any point, impaired her ability to work.  (*See generally* AR 547 (stopped working fulltime in 2012 to care for her son who was in special education, and her last job was in 2014 at which time she was only working "a few hours a week")).  Plaintiff also reported that she has no difficulty going out alone or paying bills independently, maintains "fair" relationships with friends and family, and, on a daily basis, goes on walks and watches television.  (AR 547-48.)

Dr. Venter observed that Plaintiff was fully oriented, was able to focus her attention during the interview, and exhibited a "coherent" and "organized" thought process.  (AR 548.) He described Plaintiff's mood as anxious but her affect as within normal limits and congruent with thought content—with no signs of tangentiality, circumstantiality, or loosened associations.  (AR 547-58.)  Dr. Venter described Plaintiff's speech as normal and her communication as unimpaired.  (AR 548.)  Plaintiff demonstrated that she remembered how President Kennedy died, retained the ability to recall three items immediately and after five minutes, and had a digit span of six forward and three backwards.  (AR 549.)  Plaintiff

similarly performed fine on tests measuring her ability to concentrate and calculate (*i.e.*, she was able to perform serial 7s, answer simple mathematical questions, and spell 'world' forward and backward) and demonstrated intact abstract thinking, intact judgment, intact insight, and, generally, a "stable" mental status. (AR 550.) Plaintiff's score on the Wechsler memory scale indicated that Plaintiff functioned in the average range of memory and recall and had a working memory that was also in the average range. (AR 552.) Based on the foregoing, Dr. Venter diagnosed Plaintiff with anxiety disorder, depressive disorder, and panic disorder, assessed a GAF score 55, which indicated moderate symptoms, and opined that Plaintiff's conditions would not impair her ability to function in substantial gainful employment. (AR 552-53.) He also assessed Plaintiff with no impairment in any functional area except a mild impairment in her ability to "relate and interact with co-workers and public" and "maintain concentration and attention, persistence and pace." (AR 553.)

Having carefully reviewed the objective medical evidence, the Court finds that the medical evidence does indeed clearly establish that, prior to Plaintiff's date last insured, she did not have a mental impairment that did, or was likely to, cause more than a minimal limitation on her ability to perform any basic work activity for a continuous period of 12 months or more. *See Webb*, 433 F.3d at 686; 20 C.F.R. § 1520(a)(4)(ii). To the contrary, Plaintiff's treatment notes show that, prior to her date last insured, she consistently reported to her care providers that she had no memory changes or social issues and there are no treatment records indicating that she ever: missed, or was late to, an appointment due to a memory issue or disorganization; exhibited rambling or repetitive speech patterns; was unable to focus her attention during a medical appointment; or exhibited a disorganized thought process. Further, on the objective tests of Plaintiff's memory, recall, working memory, and ability to maintain concentration and calculation, Plaintiff performed within normal limits. Arguably, the undated statements from Routh, Plaintiff's temporary talk therapist, conflict with some of this evidence, but Routh is not an acceptable medical source under the

14

regulations, *see* 20 C.F.R. § 404.1502, POMS[4] DI 22505.03, her statements are undated, and her statements and opinions are wholly unsupported by any objective assessments or treatment notes. Furthermore, Routh opined that Plaintiff's condition was likely to significantly improve in less than 12 months with three to six months of talk therapy. Accordingly, Routh's opinion is, ultimately, consistent with the Commissioner's determination that, prior to her date last insured, Plaintiff did not have a mental health impairment that did, or was likely to, have more than a minimal effect on Plaintiff's ability to perform basic work activities for a period of at least 12 continuous months. For all of the foregoing reasons, the Court affirms the Commissioner's determination at step two of the analysis that, prior to Plaintiff's date last insured, Plaintiff did not have or develop a severe mental impairment.

## II.    The ALJ's Omission of any Limitations on Mental Functioning in the RFC

### A.  Arguments of the Parties

In her second argument, Plaintiff contends that the ALJ erred by failing to assess whether Plaintiff's mild limitation in understanding, remembering, or applying information would affect her ability to perform semi-skilled work. (Joint Stip. at 6) (citing 20 C.F.R §§ 404.1520(e), 404.1545 and S.S.R. 96-8p). Plaintiff relies on the Ninth Circuit's decision in *Hutton v. Astrue*, 491 Fed. Appx. 850, 851 (9th Cir. Dec. 5, 2012), for the proposition that the ALJ's failure to include a single mild mental limitation in a hypothetical to the VE constitutes reversible error. (Joint Stip. at 6.) In *Hutton*, the Ninth Circuit held that, in assessing the plaintiff's RFC, the ALJ could not disregard his own finding at step two that the plaintiff's mental impairment, although nonsevere, caused mild limitations in the areas of concentration, persistence, or pace. *Hutton*, 491 Fed. Appx. at 851.

---

[4]      POMS is the Social Security Administration's Program Operations Manual System, which is available at http://secure.ssa.gov/poms.nsf/Home?readform (last visited Apr. 24, 2020).

Defendant responds that, in assessing Plaintiff's RFC, the ALJ considered the evidence concerning Plaintiff's mental impairment(s) and concluded that it did not support the adoption of any limitations on Plaintiff's mental functioning. (*See* Joint Stip. at 8-9.) Again, Defendant asserts that, according to the Administrative Record, Plaintiff received mental health treatment in connection with her breast cancer treatment when she was experiencing anxiety and insomnia over "health concerns" but consistently received unremarkable mental status examinations and was able to effectively control her symptoms. (Joint Stip. at 9-10) (citing AR 421-23, 340, 342, 348, 409, 595, 602, 604, 673).

## B. Applicable Law

At step four, the ALJ must determine a claimant's residual functional capacity—the extent to which the claimant's impairment(s) and symptoms affect what she is capable of doing in a work setting. 20 C.F.R. § 404.1545(a)(1). This is distinct from the *de minimis* screening analysis at step two. At step two, the ALJ assesses whether the claimant's alleged impairments more than minimally limit her ability to perform basic work activities—and, therefore, the focus at step two is whether the medical evidence indicates limitations in certain areas of functioning generally. At step four, in contrast, the ALJ focuses on determining the claimant's actual capacity to function in a work setting—that is, "the most [the claimant] can still do *despite* [her] limitations." 20 C.F.R. § 404.1545(a)(1). Ultimately, an ALJ's RFC assessment describes the claimant's ability to perform "work-related . . . activities in a work setting on a regular and continuing basis." S.S.R. 96-8p.

In assessing a plaintiff's RFC, the ALJ must consider not only all of the relevant medical evidence but also any statements provided by medical sources, by the plaintiff herself, and by family members, neighbors, friends, or other persons. 20 C.F.R. § 404.1545(a)(3). Additionally, "[i]n determining a claimant's residual functional capacity, the ALJ must consider all of a claimant's medically determinable impairments, including those that are not

1   severe." *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014); 20 C.F.R. § 404.1545(e).

2   The courts have made clear, however, that, at step four, an ALJ is not required to *include* every

3   limitation assessed at step two in the plaintiff's RFC.  Instead, the ALJ satisfies his obligations

4   at step four so long as he *considers* every limitation assessed at step two to determine whether

5   that limitation impairs the plaintiff's overall capacity to perform work-related activities in a

6   work setting.

7

8        In *Solomon v. Comm'r of Soc. Sec. Admin.*, 376 F. Supp.3d 1012 (D. Ariz. 2019), for

9   example, the District of Arizona determined that the ALJ had erred where the ALJ's decision

10  provided no indication that he had *considered*, at step four, the plaintiff's mild limitation in

11  social functioning and concentration, persistence and pace, which the ALJ had himself

12  assessed.  *Solomon*, 376 F. Supp.3d at 1021; *accord Hutton*, 491 Fed. Appx. at 851

13  (admonishing ALJ for "disregard[ing]," at step four, the assessment of a mild limitation at step

14  two).  In *Vandiver v. Colvin*, No. 2:15-cv-00886-GMN-N JK, 2016 WL 8787118, (D. Nev.

15  Jun. 27, 2016), however, the District of Nevada found no error where the ALJ had assessed a

16  mild limitation on social functioning at step two but omitted it from her assessment of the

17  plaintiff's RFC because she had expressly incorporated her analysis of the evidence regarding

18  plaintiff's social functioning at step two into her step four assessment.  *Vandiver*, 2016 WL

19  8787118, at * 6.

20

21       More recently, in *Alva v. Berryhill*, No. 18-CV-04502-KAW, 2020 WL 1332075 (N.D.

22  Cal. Mar. 23, 2020), the Northern District of California stated that district courts in the Ninth

23  Circuit have "declined to find reversible error" when the ALJ identified limitations from non-

24  severe impairments at step two but omitted those limitations from the RFC assessment at step

25  four so long as the ALJ "considered related, additional evidence of the claimant's mental

26  impairments at step four."  *Alva*, 2020 WL 1332075, at *4 (quoting *Denney v. Saul*, No. 1:18-

27  cv-689-GSA, 2019 WL 4076717, at *8 (E.D. Cal. Aug. 28, 2019)).  In *Alva*, the Northern

28  District stated that the ALJ did not, at step four, *ignore* the mental limitations assessed at step

1   two but, rather, reviewed additional evidence relevant to those limitations and determined that

2   despite those limitations, the plaintiff engaged in a relatively normal level and range of daily

3   activity and would not be impaired in a work setting.  *Alva*, 2020 WL 1332075, at *4; *see also*

4   *George A. v. Berryhill*, Case No. 5:18-cv-405-AFM, 2019 WL 1875523, at *4 (C.D. Cal. Apr.

5   24, 2019) ("[C]ourts have found *Hutton* to be inapplicable where the record demonstrates that

6   the ALJ considered a claimant's non-severe mental impairments before concluding that they

7   did not cause any significant limitation necessitating inclusion in the RFC.").

8

9       **C. Analysis**

10

11       In light of this case law, the questions before the Court are:  (1) whether the ALJ

12   *considered* Plaintiff's mild limitation in understanding, remembering, or applying information

13   at step four—even if he ultimately omitted them his assessment of Plaintiff's RFC; and (2) if

14   so, whether there is substantial evidence in the record to support his decision to omit this

15   limitation from Plaintiff's RFC.

16

17       In assessing Plaintiff's RFC, the ALJ thoroughly reviewed the medical evidence, most

18   which has been discussed above, concerning Plaintiff's mental limitations.   The ALJ

19   specifically discussed the findings, statements, and opinions of Routh and Venter as well as

20   Plaintiff's statements to, and mental status examinations performed by, other care providers.

21   (*See, e.g.,* AR 20-23.)  The ALJ ultimately observed that, although Plaintiff complained of

22   deficits in memory, she "was consistently noted by treating and examining sources to be alert,

23   fully-oriented, with intact judgment/insight, etc.[;]" "[p]sychological testing [did] not support

24   significant memory dysfunction precluding work-like tasks[;]" "and treating physician Dr.

25   Bezema noted alleged memory loss was not witnessed."  (AR 24.)  The ALJ also discounted

26   the 2018 opinion of Dr. Mescher-Cox, M.D., an internist, who indicated marked mental

27   limitations outside her area of expertise.  (AR 25.)  In light of the foregoing, the ALJ satisfied

28   his obligation to *consider*, at step four, whether Plaintiff's mild limitation in the area of

understanding, remembering, or applying information correlated with an impaired capacity to perform work-related activities in a work setting on a regular and continuing basis.

The ALJ's conclusion that Plaintiff's mild limitation in understanding, remembering, or applying information did not, prior to the date last insured, impair Plaintiff's capacity to perform work-related activities in a work setting is supported by substantial evidence in the record. As stated above, Routh's opinion is conclusory and, further, does not support an assessment that Plaintiff's mental impairments would last for a continuous period of 12 months or more. Dr. Mescher-Cox's opinion regarding Plaintiff's mental limitations reflects Plaintiff's condition two years after Plaintiff's date last insured, and, further, is outside of Dr. Mescher-Cox's area of expertise. Meanwhile, objective psychological testing during the relevant period found no deficit in Plaintiff's memory and recall or in her ability to perform tasks requiring concentration and calculation. Plaintiff also repeatedly reported to her care providers during the relevant period that she had experienced no memory changes, and her treating physician (as well as other care providers, including emergency room doctors) consistently observed no deficit in Plaintiff's memory or communication. Additionally, Plaintiff consistently demonstrated a remarkable ability to remember and juggle a complex web of medical appointments with different care providers and there are no indications in any treatment notes that she ever missed or was late to an appointment or otherwise struggled to retain information conveyed to her by her multiple care providers. Finally, Plaintiff demonstrated the ability to understand, remember, and apply information in a fully appropriate manner in her responses to the questioning during the hearing.

In light of the foregoing, there is more than substantial evidence in the record to support the ALJ's conclusion that, although Plaintiff had a mild limitation in the functional area of understanding, remembering, or applying information, this limitation did not impair Plaintiff's capacity to perform work-related activities in a work setting during the relevant period. In reaching this conclusion, the Court is mindful that the record contains some evidence that

could support an alternative conclusion.  However, the ALJ's decision need not be supported by a preponderance of the evidence, only by "such relevant evidence as a reasonable mind might accept as adequate."  *See Gutierrez*, 740 F.3d at 522-23; *see also Molina*, 674 F.3d at 1110 ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").  Accordingly, the ALJ's decision is AFFIRMED.

## CONCLUSION

The Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error.  Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY

DATE: April 27, 2020

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE